```
 1  COLEMAN & BALOGH LLP
    ETHAN A. BALOGH, No. 172224
 2  EVAN C. GREENBERG, No. 271356
    235 Montgomery Street, Suite 1070
 3  San Francisco, CA 94104
    Direct: 415.391.0441
 4  Facsimile: 415.373.3901
    eab@colemanbalogh.com
 5
 6  Attorneys for Defendant
    BARBARA JOAN LOPP
 7
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, Plaintiff, v. BARBARA JOAN LOPP, Defendant. | Case No. 15 Cr. 373 YGR-KAW<br><br>NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT<br><br>Date:   February 25, 2016<br>Time:   2:00 p.m.<br><br>Before the Honorable Yvonne Gonzalez Rogers<br>United States District Judge |
|---|---|

**EVIDENTIARY HEARING REQUESTED**

TO: BRIAN STRETCH, ACTING UNITED STATES ATTORNEY, and KELSEY LINNETT, SPECIAL ASSISTANT UNITED STATES ATTORNEY

PLEASE TAKE NOTICE that on February 25, 2016 at 2:00 p.m., or as soon thereafter as she may be heard, defendant Barbara Joan Lopp, by and through her counsel, will and does hereby move this Court to enter an Order granting the motion listed below.

**MOTION**

Barbara Joan Lopp, by and through her counsel, respectfully moves this Court pursuant to the Fourth Amendment to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable case law and statutes for an Order suppressing all evidence and fruits of evidence obtained from an unlawful stop and arrest conducted on February 12, 2015

by police officers of the Woodbury County Sheriff's Office and the Sioux City Police Department, including but not limited to all statements made by Ms. Lopp and all physical evidence obtained from her person and from the rental vehicle as a fruit of her unlawful detention and arrest. This motion is based on the instant notice of motion and motion, the attached memorandum of points and authorities, the Declaration of Ethan A. Balogh Filed January 21, 2016, the pleadings and Orders on file in the Clerk's Record, and any and all other materials that may come to this Court's attention at the time of the hearing on this motion.

                                              Respectfully submitted,

DATED: January 21, 2016            COLEMAN & BALOGH LLP

                                                */s/ E A Balogh*
                                          By: ETHAN A. BALOGH
                                          235 Montgomery Street, Suite 1070
                                          San Francisco, CA 94104
                                          Direct: 415.391.0441

                                          Attorneys for Defendant
                                          BARBARA JOAN LOPP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

As the Court is aware, this case arises from defendant Barbara Joan Lopp's February 12, 2015 arrest in Sioux City, Iowa.  *See* ECF Nos. 43, 54.  In brief, officers from the Woodbury County Sheriff's Office ("WCSO") and Sioux City Police Department ("SCPD") detained and arrested Ms. Lopp on a hunch.  Because, at the times they acted, the officers lacked legal cause to support her detention or arrest, her detention and arrest violated her Fourth Amendment rights.  These violations necessitate suppressing the evidence, and fruits of the evidence, obtained as a result of the officers' unlawful actions.  In this case, Ms. Lopp seeks suppression of all statements at her detention and thereafter, including recorded jail calls and police interviews, as well as the suppression of all physical evidence seized from her person and from the rental vehicle.

## II. Facts[1]

According to the WCSO and SCPD, on February 12, 2015, police offers detained and arrested Ms. Lopp in Sioux City, Iowa.  The facts as presented by the reporting officers are not completely clear or consistent.

We begin with the report prepared by WCSO Deputy Michael Lenz.  He reported that at an unspecified time on February 12, 2015, he "and Deputy Brand overheard Sioux City PD radio traffic on a male subject inside of a credit union on S. Fairmont that was possibly committing

////

---

[1] Ms. Lopp presents here the events as reported by the SCPD and WCSO.  While she accepts those accounts *arguendo* for the purposes this memorandum, she reserves the right to contest the officers' narratives, and to present evidence demonstrating factual inaccuracies in those accounts.  The reports produced by the Government are attached as Exhibits A and B to the Declaration of Ethan A. Balogh Filed January 21, 2016 ("Balogh Decl.").  Although those reports direct the reader to review a report prepared by Deputy Brand, *see e.g.*, *id.*, Ex. A at FBI 3561, FBI 3563, FBI 3566, and although Ms. Lopp requested the production of Deputy Brand's report(s), *see id.* ¶ 2, as of this filing, the Government has not yet produced any such report(s).  *Id.*  In addition, the Government has informed Ms. Lopp that it is in the process of seeking to obtain the video recording that reportedly exists with respect to Ms. Lopp's detention and arrest.  *Id.*

credit card fraud." Balogh Decl. Ex. B at WCSO 11.[2] Deputies Lenz and Brand "proceeded to assist Sioux City PD in locating the possible vehicle." *Id*. Upon coming to the area of the credit union, Deputy Lenz reports as follows:[3]

> we passed a silver SUV that was parked along the curb, directly across from the credit union. This vehicle had Wisconsin plates and was still running with one female occupant in the driver's seat.
>
> As we passed this vehicle, the driver appeared to become nervous and made a U-turn and headed back toward the credit union parking lot. Again, we passed her, a second time, still appeared [sic] to be nervous.
>
> As we parked in the credit union parking lot, the silver vehicle began to drive away, heading west on 1st St., away from the credit union. We then initiated a traffic stop on this silver SUV at 1st and Westcott.
>
> The driver of this vehicle became known to us as Barbara Lopp, she produced a paper California driver's license and a few other miscellaneous papers in regards to the vehicle being a rental.
>
> When asked what she was doing in town, from California, she told me she was here visiting her uncle. I asked her where her uncle lived, to which she continually stated she did not know.
>
> She stated she was here with her brother, Michael Thomas, in which she first gave very little information about. Barbara's story was not adding up and seemed very suspicious.
>
> Deputy Brand then read Barbara her Miranda Rights, to which she acknowledged.
>
> It was later found out that Michael Thomas was, in fact, not her brother, but she felt that Michael was her brother.
>
> I asked her where Michael was and she stated she had dropped him off over there, to which she pointed in the direction of Gordon Dr.
>
> I questioned her as to why she would drop him off in the middle of Sioux City, if they didn't even know their way around, didn't know where their uncle lived. She could not give me a straight answer as to why she dropped him off.
>
> I asked her what Michael was wearing, to which, at first, she stated she did not know.

---

[2] For several reasons, including Deputy Lenz's narrative reflecting that the subject vehicle was requested to be towed at 11:28 a.m., *see* Balogh Decl. Ex. B at WCSO 9, we understand Ms. Lopp's detention and arrest to have transpired in the morning hours of February 12, 2015.

[3] Although Deputy Lenz provided an abbreviated summary of these events, *see id.* at WSCO 10, we present his more detailed account for the Court's consideration.

Def. Lopp's Mot. to Suppress
Case No. 15 Cr. 373 YGR-KAW            2

> A little while later, I asked her the same question, again, and she stated Michael was a tall black male and he was wearing a brown jacket. This description she provided matched the description that Sioux City PD had advised us of.
>
> Sioux City PD was advised of the vehicle and suspect we had stopped and a short time later Sioux City PD Officers Stroman, Harstad and Lewis arrived and took Barbara into custody to be taken to the Sioux City PD for further questioning.

Balogh Decl. Ex. B at WCSO 11-12.

The officers from the SCPD presented a somewhat different account. Beginning with SCPD Officer Robert K. Johnson, he reported that at approximately 10:30 a.m. February 12, he responded to the Municipal Credit Union to investigate "a black male subject inside the credit union attempting to do a credit card advance." *Id*. Ex. A at FBI 3560. He detained that male—who identified himself as Davon Miller, and who later was determined to be Michael Thomas—to conduct an investigation. *Id*. at FBI 3560-61. That investigation revealed (1) that a check on the California driver's license the subject provided came back with a different name and address than the subject had provided; and (2) the bank manager reported that the subject previously attempted a transaction at the bank. *Id*. at FBI 3560. Officer Johnson also reported that another detective—Detective Nice, who was not on the scene—had "thought this was a fraudulent situation because the subject attempted to go to several different credit unions or banks in the Sioux City area attempting to get money this way." *Id*. Officer Johnson detained Thomas until SCPD detectives could arrive. *Id*.

With respect to Ms. Lopp, Officer Johnson reported as follows:

> It should also be note [sic] that when I went outside Deputy Brand was in the parking lot. He stated that there was a silver Chevy vehicle parked on (I believe) 1st Street, just to the north of the bank, facing west. He stated that the female driver was sitting in that vehicle. It had Wisconsin plates on it, which links back to a rental car company. He stated that female seemed like she was just sitting there for no real purpose. Then a short time later she started to drive away. *Deputy Brand asked if I wanted the vehicle stopped so we could identify the driver. I advised him yes.* You would have to refer to those officers' dictations in reference to that female. It was later determined that her name was Barbara Lopp and he [sic] was, in fact, the driver for Miller.

*Id*. at FBI 3561 (emphasis added).

SCPD Detective Jeffrey Harstad also responded to the credit union after being called by Officer Johnson. *Id*. at FBI 3561. When Officer Johnson called Detective Harstad, Officer Johnson had already directed deputies Brand and Lenz to detain Ms. Lopp, and they had accomplished that goal. *Id*. Upon arriving, Detective Harstad first investigated Thomas in the credit union, before proceeding to the location where the officers had arrested Ms. Lopp. *Id*. at 3561-63. With respect to Ms. Lopp's arrest, Detective Harstad reported as follows:

> Det. Lewis and I both went over to 1st and Westcott, where we met with Deputy Brand. He and other deputy I do not know had stopped this particular vehicle. According to Deputy Brand, this individual was leaving from that particular area and this individual was named Barbara Lopp. She was giving kind of a strange story to Deputy Brand and was going on to explain that she had dropped this individual off at that particular community credit union and did know what he was doing; didn't know what he was wearing; so on and so forth. It just appeared to be suspicious.
>
> The plate in this was going to be Wisconsin #673-UXF. According to her somebody had rented this particular vehicle by the name of Jason Henderson, but he was not present and she did not know where he was. She stated that she believed that he rented it or possibly Michael Thomas. We asked who Michael Thomas was and she indicated that it was the other gentleman that was over at the community credit union; however that individual was going by the name Davon Miller. So, it was kind of confusing as to who this individual was over at the community credit union. He was going by Davon Miller; however Barbara was telling us that it was Michael Thomas.
>
> So at that particular time we explained to her that we needed her to come down with us to the Sioux City Police Department and do an interview. She was already Mirandized by Deputy Brand. Please see his report for further details on the initial contact that he had with her.
>
> It should be noted that she was in possession of a large purse that was brought with her and there were other miscellaneous item [sic] throughout the vehicle in the back. In plain view you could see that there were two suitcases or two bags that were full of items. We did not go through the vehicle, we simply had it towed to the Sioux City Police Department for a search warrant to be conducted on that.

*Id*. at FBI 3563.

Officer Zachary Lewis also responded to the credit union with Detective Harstad, and was briefed by Officer Johnson regarding the black male's production of a driver's license that came back with a different name and address than the subject had provided. *See id*. at FBI 3572. After

////

directing Officer Johnson to transport Thomas to the police department, Officer Lewis addressed the circumstances of Ms. Lopp's arrest, as follows:

> Deputy Brand, and I believe he had a training deputy with him, had a vehicle stopped that was involved in this. I talked with Brand on scene initially. He said that she was denying that she had any involvement with the male party in there and later said it was her brother. When I spoke with her, Deputy Brand had already read her Miranda warning. I asked her who that person was that she dropped off. She said it was her brother, Michael Thomas.
>
> It was determined that she would be going down to the Police Department as well. She had a very large purse, as she called it, on the front passenger seat. I had her hand me the keys. I had her bring the purse with her. She was visually checked for weapons by Officer Stroman and placed in the back of the squad car. I gave the keys to Deputy Brand. They were going to tow the vehicle for us down to the Police Department and put it in the bay so we could do a Search Warrant. We called Aaron Liebe, DOT investigator, possibly for his assistance. He came to the Police Department. Detective Thompson assisted with writing a Search Warrant for the vehicle.

*See id*. at FBI 3573.

As shown, the SCPD and WCSO officers had neither a warrant nor sufficient other legal cause to detain and arrest Ms. Lopp on the morning of February 12, 2015.

### III.  Argument

**A.    The Fourth Amendment standards.**

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const., amend. IV. "As a general rule, searches conducted without a warrant and probable cause are presumptively unreasonable, subject to a number of specifically established and well-delineated exceptions." *United States v. Rambo*, 74 F.3d 948, 953 (9th Cir. 1996) (quotation marks omitted). "The burden of proving that a warrantless search or seizure falls within an exception to the warrant requirement is on the government." *United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012).

"Under the Fourth Amendment, government officials may conduct an investigatory stop of a vehicle only if they possess reasonable suspicion: a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir. 2000) (quotation marks omitted). "Such reasonable suspicion requires *specific, articulable facts* which, together with objective and reasonable inferences, form a basis

for suspecting that a particular person is engaged in criminal conduct." *Id.* (quotation marks omitted) (emphasis added). All evidence resulting from an illegal detention, search, or seizure must be suppressed as fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

Similarly, the Fourth Amendment permits warrantless arrests where the government actors can demonstrate probable cause. "Probable cause for a warrantless arrest exists if under the totality of the facts and circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime." *United States v. Fixen*, 780 F.2d 1434, 1436 (9th Cir. 1986) (internal quotations and citation omitted).

**B.   Application of the Fourth Amendment standards demonstrates the unlawfulness of the officers' detention and arrest of Ms. Lopp.**

The February 12 stop fails under the applicable standards. Because the stop was conducted without a warrant, it is presumptively unreasonable, and no exception to the warrant requirement applies. So too, the officers had no legal cause—reasonable suspicion or otherwise—to seize Ms. Lopp on the morning of February 12. Instead, the *only* basis for the stop was to determine the identity of the driver, about whom the officers had no specific, articulable facts to demonstrate that she was engaged in criminal conduct. *See* Balogh Decl. Ex. A 3579 (Sergeant Christopher Groves's narrative: "They [the WCSO officers] also located a female party, it was a white female, sitting in a silver vehicle with Wisconsin plates, I believe it was a rental car, sitting somewhere in the vicinity. *When they went to speak to her, not knowing if she was involved or not,* she made some indication that she was waiting for the male party or something to that affect [sic], they believed that she was involved as the driver or had dropped this male party off.") (emphasis added). More bluntly, the police have conceded that they lacked sufficient information to conclude that Ms. Lopp was then "a particular person . . . engaged in criminal conduct." *See Twilley*, 222 F.3d at 1095.

Indeed, as set forth above, Deputy Brand directed the detention of Ms. Lopp based solely on the following facts: that there was a "female [who] seemed like she was just sitting there [in a vehicle] for no real purpose." *Id.* at FBI 3561. At the time Deputy Brand directed the detention, all he and Deputy Lenz knew about Thomas's conduct was "radio traffic on a male subject inside

of a credit union on S. Fairmont that *was possibly* committing credit card fraud." *Id*. Ex. B at WCSO 11 (emphasis added).  But the officers did not know any facts to conclude that Thomas had, in fact, committed a crime, and most certainly possessed no specific, articulable facts to connect Ms. Lopp with any criminal conduct.  At that point, the officers had no reason to believe that Thomas was associated with anyone, much less Ms. Lopp; nor did they have any basis to believe anything other than Thomas arrived at the credit union alone.  Driving away from a credit union, while obeying all traffic laws, did not provide any basis for the officers to detain Ms. Lopp.

Under these circumstances, the enforcement stop violated the Fourth Amendment, *see Twilley*, 222 F.3d at 1095, and the Court should enter an Order suppressing all evidence and fruits of evidence obtained from the stop. *Wong Sun*, 371 U.S. at 487-88.

Next, assuming *arguendo* the Government can avoid the impact of the unlawful stop—and it should not—the Court should still grant this motion on the alternative ground that the officers arrested Ms. Lopp without probable cause.  On this point, Ms. Lopp contends that she was effectively under arrest at the time of the initial detention, but in any event, that detention blossomed into an arrest no later than when Deputy Brand issued the *Miranda* warnings.

Ms. Lopp agrees that no bright-line rule establishes when an investigatory stop becomes an arrest. *See Green v. City and County of San Francisco*, 751 F.3d 1039, 1047 (9th Cir. 2014). Rather, courts examine the totality of the circumstances to distinguish a stop from an arrest, focusing on the perspective of the person seized rather than the subjective beliefs of the officers. *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1176 (9th Cir. 2013).  The question is whether a reasonable person in the same circumstances would not have felt free to leave after brief questioning. *Id.*

Courts look at two main components of the detention in looking at the totality of the circumstances. *United States v. Edwards*, 761 F.3d 977, 981 (9th Cir. 2014).  First, courts assess the intrusiveness of the stop, *i.e.*, the aggressiveness of the police methods and the extent of the restrictions on the person's liberty. *Id*.  It is under this first component that courts assess whether

a reasonable person would have felt free to leave. *Id.* The second component is the justification for the use of such tactics, viewed from the perspective of law enforcement. *Id.*

The duration of detention also weighs in determining whether a stop has become an arrest. *United States v. Guzman-Padilla*, 573 F.3d 865 (9th Cir. 2009). And the Sixth Circuit teaches that "[t]he reading of *Miranda* rights, while not dispositive, is also evidence that a stop has become an arrest." *United States v. Lopez-Medina*, 461 F.3d 724, 740 (6th Cir. 2006); *see also United States v. Lopez-Arias*, 344 F.3d 623, 628 (6th Cir. 2003) (affirming district court's ruling that the subject was arrested, and noting that the reading of the rights made the seizure "more like an arrest").

In this case, Officer Johnson directed the detention of Ms. Lopp solely to obtain her identity. *See* Balogh Decl. Ex. A at 3561 ("Deputy Brand asked if I wanted the vehicle stopped so we could identify the driver. I advised him yes."). But that event—in which Ms. Lopp accurately identified herself to law enforcement, *viz.*, presented innocent conduct—took a minute or less. But the officers did not release her then. Instead, the police reports demonstrate that the officers detained and questioned Ms. Lopp for an extended period while the officers investigated Thomas in the credit union.[4] Put another way, upon being pulled over for no traffic violation, a reasonable person in Ms. Lopp's position would not have felt free to drive off after answering the officers' questions as to her identity. So too, the justification for her detention was nothing more than a hunch that she might be connected to Thomas.

Ms. Lopp's subsequent acknowledgment under questioning that she dropped off Thomas does not change the analysis. Rather, even that connection does not establish that there existed then "a fair probability that [Ms. Lopp] had committed a crime." *See Fixen*, 780 F.2d at 1436. Rather, as surmised by Detective Harstad, when Ms. Lopp admitted to dropping off Thomas, because *Thomas* had given a fake name in the credit union, the officers were unsure about what connection, if any, Ms. Lopp had to Thomas's conduct, so they arrested her so they could sort it

---

[4]The production of the video recording, which we expect presently based on the correspondence with government counsel, *see* Balogh Decl. Ex. B & ¶ 2, should shed light on the length of the officers' restrictions of Ms. Lopp's liberty.

out at the police station. *See* Balogh Decl. Ex. A at 3563. While the officers' hunches ultimately proved correct, that's beside the point: at the time they arrested Ms. Lopp, the officers lacked probable cause to secure her custody by arrest. As a result, the Court should issue an Order suppressing all evidence, and the fruits of evidence, from Ms. Lopp's unlawful arrest.

## IV. Conclusion

For the reasons set forth above, the Court should issue an Order declaring Ms. Lopp's detention and/or arrest to have been accomplished in violation of her Fourth Amendment rights, and suppressing all evidence, and the fruits of all evidence, obtained from the unlawful detention and arrest.

Respectfully submitted,

DATED: January 21, 2016              COLEMAN & BALOGH LLP

*/s/ E A Balogh*
By: ETHAN A. BALOGH
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
Direct: 415.391.0441

Attorneys for Defendant
BARBARA JOAN LOPP

**PROOF OF SERVICE**

I, Ethan A. Balogh, certify that on January 21, 2016, I served all parties in this matter by causing the preceding pleading to be filed electronically through the Court's ECF System, as set forth by Local Rule 5-1.

Dated: January 21, 2016                    */s/ E A Balogh*
                                                                ETHAN A. BALOGH